Chad D. Nardiello, Bar No. 224837
Chad@NardielloLaw.com
NARDIELLO LAW FIRM, PLC
1875 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 284-3157 Tel
(310) 284-3158 Fax
Attorney for Plaintiff

Yosef Y. Manela, Bar No. 240617
Yosef@Manelaco.com
MANELA & CO.
6300 Wilshire Blvd.
20th Fl. – Suite 2030
Los Angeles, CA 90048
(323) 782-0818 Tel
(323) 782-0828 Fax
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN Q. RODGERS,<br><br>Plaintiff and<br><br>Counterclaim Defendant,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant and<br><br>Counterclaim Plaintiff. | CASE NO.: 2:15-CV-9441-GHK-AS<br><br>**PLAINTIFF JOHN Q. RODGERS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |

<u>TABLE OF CONTENTS</u>

I.      INRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

II.     SUMMARY STATEMENT OF CLAIMS, ELEMENTS, STANDARD OF
        PROOF AND BURDENS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

        A.    Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

        B.    Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

              1.    Willful Attempt to Understate (Section 6694(b)(2)(A)) . . . . . . . . . . . .  7

              2.    Reckless or Intentional Disregard (Section 6694(b)(2)(B)) . . . . . . . . .  7

              3.    The Distinctions Between Willfulness, Intentional, and Reckless . . . . . .  8

        C.    Standards of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

              1.    Willfulness – Clear & Convincing . . . . . . . . . . . . . . . . . . . . . . .  11

              2.    Reckless or Intentional – Preponderance . . . . . . . . . . . . . . . . . .  15

        D.    Burdens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

III.    SUMMARY OF EVIDENCE IN SUPPORT OF PLAINTIFF'S CLAIMS . . . . . .  16

        A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

        B.    Systems & Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

        C.    The Clients . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

        D.    The Clients' Businesses . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

        E.    Tax Return Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

        F.    The 2009 & 2010 Tax Returns . . . . . . . . . . . . . . . . . . . . . . . .  23

IV.     DEFENDANT'S AFFIRMATIVE DEFENSE - VARIANCE . . . . . . . . . . . . . .  23

V.      EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

VI.     LEGAL ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

VII.    ATTORNEY'S FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

VIII.   OTHER MATTERS IN L.R. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

# TABLE OF AUTHORITIES

## STATUTES

26 U.S.C. §6694(b) ............................................................................................... passim

26 U.S.C. §6694(d) ...................................................................................................... 25

26 U.S.C. §6694(e) ...................................................................................................... 25

26 U.S.C. §7427 ..................................................................................................... 12, 16

26 U.S.C. §7430 ........................................................................................................... 28

26 U.S.C. §7491(c) ................................................................................................. 15, 25

26 U.S.C. §7701(a)(36) .................................................................................................. 8

## CASES

*Boyd v. United States*, 762 F.2d 1369 (9th Cir. 1985) ................................................ 24

*Bradford v. Comm'r*, 796 F.2d 303 (9th Cir. 1986) .................................................... 12

*Carlson v. United States*, 754 F.3d 1223 (11th Cir. 2014) .................................. passim

*El v. Commissioner*, 144 T.C. 9 (Mar. 12, 2015) ................................................. 15, 25

*Higbee v. Commissioner*, 116 T.C. 438 (June 6, 2001) ........................................ 15, 25

*Maciel v. Comm'r*, 489 F.3d 1018 (9th Cir. 2007) ..................................................... 12

*North Carolina Citizens for Business & Indus. v. United States*, 18 Cl. Ct. 106 (Ct. Cl. 1989) ..... 24

*Osio v. United States*, 1977 U.S. Dist. LEXIS 14593 (C.D. Cal. Aug. 5, 1977) ............................ 15

*Richey v. United States*, 9 F.3d 1407 (9th Cir. 1993) .......................................... passim

*Tucker v. Alexander*, 275 U.S. 228 (1927) ................................................................. 24

*United States v. Bishop*, 412 U.S. 346 (1973) ............................................................ 11

*United States v. Kapp*, 564 F.3d 1103 (9 Cir. 2009) .................................................. 12

*United States v. Salerno*, 902 F.2d 1429 (9th Cir. 1990) ........................................... 11

*United States v. Vistoso Partners, LLC*, 109 A.F.T.R.2d (RIA 344 (D. Ariz. Jan. 3, 2012) ........15

1

## REGULATIONS

2

26 C.F.R. §301.6402-2(b)(1) .................................................................................. 24

26 C.F.R. §1.6694-1(b)(1) ................................................................................... 7, 8

26 C.F.R. §1.6694-3(b) ............................................................................. 7, 8, 9, 13

26 C.F.R. §1.6694-3(c) .............................................................................. 8, 9, 10

26 C.F.R. §1.6694-3(c)(2) ................................................................................... 10

26 C.F.R. §1.6694-3(c)(3) ................................................................................... 10

26 C.F.R. §1.6694-3(e) ....................................................................................... 11

26 C.F.R. §1.6694-3(h) ....................................................................................... 16

26 C.F.R. §301.7701-15 .................................................................................... 7, 8

3

4

5

6

7

8

9

10

11

## OTHER AUTHORITIES

12

S. Rep. No. 94-938, at 355 (June 10, 1978) ........................................................ 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff, John Q. Rodgers, by and through his undersigned counsel, hereby provides Plaintiff's Memorandum of Contentions of Fact and Law.

## I.   INRODUCTION

Plaintiff initiated this action to recover amounts paid to the United States after it made assessments of tax preparer penalties against him pursuant to Internal Revenue Code ("IRC") section 6694(b).  This constitutes Plaintiff's entire claim.  Defendant counterclaimed for the balance of the unpaid assessments.  Defendant also raised variance as a possible affirmative defense.  Defendant does not assert any other claims or defenses.

The penalties at issue arise from Plaintiff's preparation of tax returns for the years 2009 and 2010 for seven of his clients.  Those clients consist of two sets of spouses and five related entities.  The Internal Revenue Service ("IRS") assessed 14 penalties against Plaintiff; one for each tax return.  Defendant has since conceded five of those penalties as being improper.  Defendant alleges that Plaintiff caused understatements of tax on one or more of the tax returns by engaging in conduct that violates IRC section 6694(b).  Plaintiff however did not engage in any such conduct, and the IRS's imposition of the penalties is improper.

The parties have disagreements regarding multiple legal and evidentiary issues.  In particular, Plaintiff believes the parties dispute the standard of proof with respect to one of penalty types, the means of demonstrating understatements of tax on the clients' tax returns, the relevancy of Plaintiff's expert, and potentially the

scope of the willfulness standard used in the penalty statute.  These issues will affect the trial of this action, including with respect to substance and length.

## II.   SUMMARY STATEMENT OF CLAIMS, ELEMENTS, STANDARD OF PROOF AND BURDENS

Considering the overlapping nature of Plaintiff's claims and Defendant's counterclaims, this memorandum will provide a single explanation of the parties' claims, elements, standards of proof, and burdens.

### A. Claims

At issue in this action is whether Plaintiff in preparing tax returns for his clients is subject to return preparer penalties under IRC section 6694(b) by engaging in one or both of the following: (i) willfully attempting to understate the tax liabilities of his clients; and/or (ii) recklessly or intentionally disregarding rules or regulations.  Plaintiff's position is that he did not act willfully, recklessly or intentionally in violation of IRC section 6694.  After assessment of 14 penalties ($5,000.00 each), Plaintiff paid 15 percent of the penalty assessments and initiated this suit for a refund of that payment.  Defendant counterclaimed for the balance of the unpaid penalties.

### B. Elements

The parties' claims revolve around IRC section 6694(b).  That statute contains two separate and distinct sub-sections that penalize differing conduct. Pursuant to IRC section 6694(b)(2)(A), a preparer may be penalized for "a willful

attempt in any manner to understate the liability for tax on the return." Alternatively, pursuant to IRC section 6694(b)(2)(B), a preparer may be penalized for "a reckless or intentional disregard of the rules or regulations." This distinction is important for two reasons. First, it determines which party bears the ultimate burden of proof, as will be described in greater detail below. And second, the underlying elements to be proven at trial are different. A listing of the elements for each subsection are as follows:

1. *Willful Attempt to Understate (Section 6694(b)(2)(A))*

A violation of IRC section 6694(b)(2)(A) requires the following:

(a) There is an understatement of liability on a tax return;[1]

(b) The individual is a tax return preparer within the meaning of IRC section 7701(a)(36) and Treasury Regulation section 301.7701-15;[2]

(c) The individual is primarily responsible for the position on the return giving rise to the understatement of liability;[3] and

(d) The conduct constitutes a willful attempt to wrongfully understate the liability for tax on the return.[4]

2. *Reckless or Intentional Disregard (Section 6694(b)(2)(B))*

A violation of IRC section 6694(b)(2)(B) requires the following:

---

[1] 26 U.S.C. §6694(b)(1) and 26 C.F.R. §1.6694-1(a)(1).
[2] 26 U.S.C. §6694(b)(1) and 26 C.F.R. §1.6694-1(b)(1).
[3] 26 U.S.C. §6694(b)(1) and 26 C.F.R. §1.6694-1(b)(1).
[4] 26 U.S.C. §6694(b)(2)(A) and 26 C.F.R. §1.6694-3(b).

(a) There is an understatement of liability on a tax return;[5]

(b) The individual is a tax return preparer within the meaning of IRC section 7701(a)(36) and Treasury Regulation section 301.7701-15;[6]

(c) The individual is primarily responsible for the position on the return giving rise to the understatement of liability;[7] and

(d) The conduct constitutes an intentional disregard of a rule or regulation, or the preparer is reckless in not knowing of the rule or regulation.[8]

### 3.  *The Distinctions Between Willfulness, Intentional, and Reckless*

The statute uses three different standards is describing the type of conduct that is subject to penalty: willfulness, intentional and reckless.  These standards are used in different contexts in the statute.  The willfulness standard is used to penalize an attempt "wrongfully" to understate tax on a client's tax return by a preparer that "disregards information."[9]  The reckless and intentional standards are used to penalize a preparer that demonstrates "disregard of rules or regulations."[10]  Thus, the aims of the two subsections are different.

Each of the three standards have been further articulated by the Treasury

---

[5] 26 U.S.C. §§6694(b)(1) and (e), and 26 C.F.R. §1.6694-1(a)(1).
[6] 26 U.S.C. §6694(b)(1) and 26 C.F.R. §1.6694-1(b)(1).
[7] 26 U.S.C. §6694(b)(1) and 26 C.F.R. §1.6694-1(b)(1).
[8] 26 U.S.C. §6694(b)(2)(A) and 26 C.F.R. §1.6694-3(c).
[9] 26 U.S.c. §6694(b)(2)(A); 26 C.F.R. §1.6694-3(b).
[10] 26 U.S.C. §6694(b)(2)(B).

Regulations and case law.  The penalty that is imposed for willfulness is found in IRC section 6694(b)(2)(A).  The Ninth Circuit equates willfulness in the context of a preparer penalty under section 6694(b) with the willfulness standard used in the federal criminal tax statutes.[11]  That standard is defined as either a "voluntary, intentional violation of a known legal duty," or "a conscious act or omission made in the knowledge that a duty is therefore not being met."[12]  The Treasury Regulations further state that "[a] preparer is considered to have willfully attempted to understate liability if the preparer disregards, in an attempt *wrongfully* to reduce the tax liability of the taxpayer, information furnished by the taxpayer or other persons."[13]

The penalty that is imposed for either reckless or intentional disregard of the rules is found in IRC section 6694(b)(2)(B).  As the Treasury Regulations make clear, this sub-section applies to two unique types of conduct.  The first is a reckless disregard, and the second is an intentional disregard.  The reckless disregard portion of the statute penalizes the preparer that disregards the rules because he or she did not know of the rule but should have, with the lack of knowledge constituting a "substantial deviation" from the conduct of a reasonable preparer.[14]  The intentional-

---

[11] *Richey v. United States*, 9 F.3d 1407, 1411 (9th Cir. 1993) ("the term 'willful' has the same meaning under both sections 7206 [criminal statute for filing a false tax return] and 6694").

[12] *Id.* (*internal citations omitted*).

[13] 26 C.F.R. §1.6694-3(b) (*emphasis added*).

[14] 26 C.F.R. §1.6694-3(c)(1).

disregard portion of the statute seeks to penalize the preparer that knows of the rule and violates it intentionally.[15]  The legislative history explains that the focus is on the preparer that "in fact knew that the rules or regulations were not followed."[16]

The relevant Treasury Regulations explain that "a preparer is considered to have recklessly or intentionally disregarded a rule or regulation if the preparer takes a position on the return … that is contrary to a rule or regulation … and the preparer knows of, or is reckless in not knowing of, the rule or regulation in question."[17]  The regulations further explain that a "preparer is reckless in not knowing of a rule or regulation if the preparer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable preparer would observe in the situation."[18]

The regulations also explain that a preparer is not considered to have recklessly or intentionally disregarded a rule or regulation if the position has a "reasonable basis …and is adequately disclosed."[19]  In addition, with respect to a position that is contrary to a revenue ruling or notice, the preparer is not considered to have recklessly or intentionally disregarded a rule or regulation "if the position meets the substantial authority standard."[20]

---

[15] *Id.*
[16] S. Rep. No. 94-938, at 355 (June 10, 1978).
[17] 26 C.F.R. §1.6694-3(c)(1).
[18] *Id.*
[19] 26 C.F.R. §1.6694-3(c)(2).
[20] 26 C.F.R. §1.6694-3(c)(3).

The rules or regulations that the statute refers to include the following: "the Internal Revenue Code (Code), temporary or final Treasury Regulations issued under the Code, and revenue rulings or notices (other than notices of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin."[21]

C. Standards of Proof

1. *Willfulness – Clear & Convincing*

To the extent that Defendant asserts that Plaintiff engaged in a willful attempt to wrongfully understate his clients' tax liabilities, the standard of proof should be clear and convincing evidence.

As a general matter, the United States Supreme Court has defined the willfulness requirement among the federal criminal tax statutes as being identical in requiring "a voluntary, intentional violation of a known legal duty."[22]  The Supreme Court has further articulated that willfulness as used in the criminal tax statutes requires the specific intent to defraud the government of tax.[23]

The Ninth Circuit similarly defines civil tax fraud as the "intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known

---

[21] 26 C.F.R. §1.6694-3(e).
[22] *United States v. Bishop*, 412 U.S. 346, 359-60 (1973).
[23] *Id.*, at 361; *see also United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990) ("to make out a 'willful violation' of section 7206(2) the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws").

to be owing."[24]  And the government "bears the burden of proving fraud by clear and convincing evidence."[25]

It is not insignificant that since the inception of section 6694(b)(2)(A), Congress has by statute imposed the burden on the government in the case of the willful penalty.  Section 7427 states, "In any proceeding involving the issue of whether or not a tax return preparer has willfully attempted in any manner to understate the liability for tax (within the meaning of section 6694(b)), the burden of proof in respect of such issue shall be upon the Secretary."  One of the few other instances in the civil tax law where the burden of proof is placed on the government is in the tax fraud context, as described above, where the standard of proof is by clear and convincing evidence.

Plaintiff is unaware of any binding precedent or any other cases from the Ninth Circuit that have directly analyzed and ruled on the appropriate standard of proof for willfulness in section 6694(b)(2)(A).[26]  The Ninth Circuit however has equated the willfulness standard in section 6694 with the federal criminal tax

---

[24] *Maciel v. Comm'r*, 489 F.3d 1018, 1026 (9th Cir. 2007) (*internal citations omitted*).

[25] *Id.*; *see also Bradford v. Comm'r*, 796 F.2d 303, 307 (9th Cir. 1986) ("The Commissioner must prove fraud by clear and convincing evidence….").

[26] *But cf. United States v. Kapp*, 564 F.3d 1103 (9 Cir. 2009) (applying a preponderance standard in a preparer injunction case under section 7407 that includes establishing a violation of section 6694).  In *Kapp*, the Ninth Circuit did not distinguish between violations of section 6694 based on negligence, recklessness, or willfulness, because the injunction statute, IRC section 7407, makes no such distinction.  It is sufficient to meet the requirement under section 7407 if negligence is proven under section 6694.  The court in *Kapp* also did not undertake any particularized analysis of the standard of proof to be applied in a 6694 penalty case that relies upon willfulness.  Thus, *Kapp* and the preparer injunction cases that cite it are inapposite on the standard of proof here.

statutes.[27]  Those statutes in the Ninth Circuit similarly contain and describe that standard as follows: "voluntary, intentional violation of a known legal duty," or "a conscious act or omission made in the knowledge that a duty is therefore not being met."[28]  The presence of the scienter requirement, i.e., that the preparer knew that he or she was violating a legal duty by attempting to understate tax, necessitates the elevated standard of clear and convincing evidence.  Indeed, the Treasury Regulation explains that the focus of the statute is on the preparer that "attempt[s] *wrongfully* to reduce the tax liability of the taxpayer."[29]

This reasoning was adopted by the Eleventh Circuit in *Carlson v. United States* when it examined the standard of proof to be applied to an action involving one of the few other preparer-related penalties in the Code; specifically, IRC section 6701.[30]  This penalty applies to a preparer that aids or abets the understatement of tax liability, and similarly contains a scienter requirement, i.e., the preparer "knows that such portion [of the return] (if so used) would result in an understatement of the liability for tax of another person."[31]  The court determined that such a knowledge requirement warrants elevating the standard from preponderance to clear and convincing.[32]

---

[27] *Richey v. United States*, 9 F.3d 1407, 1411 (9th Cir. 1993).
[28] *Id.*
[29] 26 C.F.R. §1.6694-3(b) (*emphasis added*).
[30] *Carlson v. United States*, 754 F.3d 1223 (11th Cir. 2014).
[31] 26 U.S.C. §6701(a)(3).
[32] *Carlson*, at 1227-29.

In dicta, the *Carlson* court discusses the relationship of sections 6701 and 6694(b).[33]  With respect to the section 6694(b), the court incorrectly states that it "penalizes tax preparers who understate the correct tax willfully or recklessly, even if the preparer does not actually know the return understates the tax."[34]  The court distinguishes section 6701 by stating that it "requires actual knowledge that the document understates tax."[35]  Based on this distinction, the court states that "actual knowledge is a higher standard than the 'willfulness' standard utilized in other statutes."[36]

In drawing this distinction, the *Carlson* court however did not examine the language of the statute in section 6694(b) as it pertains to willfulness.  The particular focus of the statute is whether the preparer acting willfully, i.e., "with knowledge that a duty is therefore not being met,"[37] attempts "to understate the liability for tax."[38]  The contemplated duty that is not being met is the correct statement of tax.  Knowledge of that duty and the wrongful failure to meet it, i.e., because the preparer knows that the tax is understated, is what section 6694(b) punishes. This is indistinguishable from the *Carlson* court's analysis with respect to section 6701.

The *Carlson* court also does not distinguish between the willful and reckless components of section 6694(b)(2)(A) and (B).  They are in fact two separate

---

[33] *Id.*, at 1229.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Richey*, at 411.
[38] 26 U.S.C. §6694(b)(2)(A).

subsections, with different legal standards, and with burdens to be borne by different parties.  Recklessness does not have the same knowledge requirement that willfulness does, as we know from the Ninth Circuit's articulation of the willfulness standard in *Richey*, as well as the relevant Treasury Regulations.

### 2.  Reckless or Intentional – Preponderance

To the extent that Defendant asserts that Plaintiff recklessly or intentionally disregarded a rule or regulation, the standard of proof is by a preponderance of the evidence.[39]

### D.  Burdens

The IRC and the Treasury Regulations set forth various burdens for the parties as it relates to litigating a case involving IRC section 6694.  As of 1998, with respect to any penalties imposed under the IRC, including section 6694(b), the United States bears the burden of production in this Court proceeding.[40]  This requires the United States to "come forward with sufficient evidence indicating that it is appropriate to impose the penalty."[41]

The party that bears the ultimate burden of proof depends on the basis for the

---

[39] *See Osio v. United States*, 1977 U.S. Dist. LEXIS 14593 *3 (C.D. Cal. Aug. 5, 1977) (In a refund suit under 28 U.S.C. section 1346(a)(1) for amounts imposed under 26 U.S.C. section 6672, the court explained that the taxpayer's burden is by preponderance of the evidence.).

[40] 26 U.S.C. §7491(c) ("Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.").

[41] *Higbee v. Commissioner*, 116 T.C. 438, 446-47 (June 6, 2001); *see El v. Commissioner*, 144 T.C. 9 (Mar. 12, 2015) (*citing Higbee*); *United States v. Vistoso Partners, LLC*, 109 A.F.T.R.2d (RIA) 344 *16 (D. Ariz. Jan. 3, 2012).

understatement to be proven by the United States.  If the understatement is due to a

willful attempt to understate a client's tax liability, then the United States bears the

burden of proof.[42]  If the understatement is due to a reckless or intentional disregard

of a rule or regulation, then the preparer bears the burden of proof.[43]

## III.   SUMMARY OF EVIDENCE IN SUPPORT OF PLAINTIFF'S CLAIMS

Plaintiff in supporting his claims will rely upon the testimony of the witnesses

that have been deposed in this case, as well as pertinent documentation to establish

that Plaintiff did not violate IRC section 6694(b).  Such evidence will demonstrate,

*inter alia*, the following facts.

A. Background

John Rodgers has been practicing as a licensed attorney and certified public

accountant ("CPA") for over 30 years.  In that time, Rodgers has never been subject

to discipline by either the California State Bar or the California Board of

Accountancy.  Moreover, the IRS has never imposed penalties on Rodgers or

referred him to the IRS's ethics division, the Office of Professional Responsibility,

prior to the instant case.

Rodgers retains a staff of licensed attorneys and accountants to work on his

clients' matters.  Those individuals have the training to prepare tax returns, perform

legal research, and/or represent individuals before various taxing authorities.  Mr.

---

[42] 26 U.S.C. §7427 and 26 C.F.R. §1.6694-3(h).
[43] 26 C.F.R. §1.6694-3(h).

Rodgers and his staff attend annual continuing education seminars that are provided by the IRS.  Such training allows them to stay abreast of changes in the law as it relates to their practices.

Rodgers and his staff limit their professional services to matters that are within their areas of knowledge.  They will not provide advice on legal issues that are beyond the scope of their expertise, e.g. retirement planning.  When such matters arise, Rodgers will refer it to a subject matter expert.

B.  Systems & Procedures

Rodgers maintains multiple systems and procedures to ensure that the work performed by his office maintains a high level of quality.  These measures are in place now and were also in place during the relevant time period.

Internally, Rodgers has structured the return preparation process in a manner that is designed to provide a system of review.  Three separate individuals are involved in the substance of preparing a tax return.  Initially, a preparer will receive information provided by the client and input such information into computer software designed for the preparation of tax returns.  The software, known as Lacerte, is the most widely used tax return preparation software in the country.  A draft tax return will then be generated and reviewed by a reviewer. Subsequently, Rodgers will perform the final review of the return.

Throughout this process, multiple things are occurring.  To the extent that any of the three preparers/reviewers have factual questions regarding the information

provided by the client, one of them will communicate with the client to obtain

clarification.  That clarification is generally documented in the file based on notes of

a telephone call, an email from the client or revised financial statements.  There is

also communication between the three individuals as to factual and legal issues that

they notice.  To the extent that a legal issue is not readily solvable, legal research is

undertaken to obtain the correct answer.  A byproduct of the factual and legal

clarifications is that Rodgers' office will generate multiple paper drafts of a tax

return before the return is approved by Rodgers for filing.

Another system in place is the control sheet that is used to document the

preparation and review of each tax return.  This is a form document created by

Rodgers that provides a central source of information as to the status of the tax

return preparation process.  As each step in the process is completed, the individual

must provide his or her initials as confirmation.

As a further measure to ensure quality, Rodgers' office sends out tax

organizer forms to clients each year for both his individual and business clients.

The forms prompt the clients to provide the information necessary to prepare the tax

returns.  The forms include spaces for the clients to handwrite information.  Not all

clients complete the forms but each client provides financial statements and/or other

source documentation.  The form also reminds clients that it is their responsibility to

provide accurate information.  And with respect to the form sent out to individuals,

it contains statements advising clients of the tax law that applies to various matters,

e.g., the limitations associated with deductions relating to business use of a vehicle.

With respect to more complex tax returns, such as the ones at issue in this case, Rodgers personally meets with the clients.  The meeting will not take place until a draft of the tax return has already been prepared in Rodgers' office.  Rodgers will use the draft return as a discussion piece during the meeting to confirm that the more significant items appearing on the return are consistent with the facts and the clients' understanding.  To the extent Rodgers or the clients raise issues of concern, it may lead to revisions to the return and another draft before the return is filed.

C.  The Clients

This case involves tax returns that were prepared by Rodgers' office for seven clients consisting of two married couples and five corporations.  The couples are husband and wife JR and KR, respectively, and husband and wife SK and LK, respectively; the five entities are RS, RP, FT, RI, and AE.[44]  The 14 tax returns in issue are for the years 2009 and 2010.

JR and SK are business partners and shareholders in RS, RP, FT, RI, and AE. They hold their ownership interests together, individually or with a third party.  JR and/or SK built these business from scratch based on their education and experience working as executives in numerous large companies, including publicly-traded, international companies.  Both hold college degrees, with SK also having completed

---

[44] To maintain the confidentiality of the clients' identities in publicly-available court filings, Plaintiff is using their initials.

a master's degree.

Rodgers began his involvement with JR in the late-1980s when JR asked Rodgers to prepare his individual tax return.  Eventually, JR asked Rodgers to prepare RS's tax return.  As JR brought SK on as a partner and the two decided to form additional entities, Rodgers' return preparation responsibilities grew.

D. The Clients' Businesses

Three of the entity clients were in the food packaging industry providing brokering and distribution services for sophisticated, high-tech packaging.  RS, the initial entity, was formed by JR and a previous business partner, and provides brokering and distribution services of plastic materials for various food industries. RP was formed to take advantage of a new laser technology to be used in packaging for the fresh produce industry.  FT was formed to take advantage of new technology developed by JR, SK and a third party for packaging associated with microwave steam cooking.

The other two entities were formed and owned individually by JR and SK.  JR formed RI, and SK formed AE, to allow them to pursue separate business ventures unassociated with each other and in unrelated industries, as well as provide specialized, extraordinary consulting services to their existing businesses.

The clients employ, including during the relevant time period, a full-time bookkeeper that is experienced in operating financial accounting software and holds professional certifications to operate such software; in particular, QuickBooks.  The

full-time bookkeeper, DS, would process and input all of the accounting items for the five entities into QuickBooks, as well as oversee the collection and storage of JR's individual accounting documentation, e.g., bank statements, 1099s, etc.

E.  Tax Return Preparation

As a general matter, the clients' tax returns were timely filed, with the entity returns being due on or before March 15 and the individual returns being due on or before April 15 of the following tax year.  At the appointed time, DS would provide the entities' relevant financial statements (income statement and balance sheet) to Rodgers' office for the preparation of their tax returns.  DS generated the financial statements from the QuickBooks software that she operated.  DS would also provide source documentation and other financial information on behalf of JR and SK for the preparation of their individual tax returns.  At least with respect to SK, he would collect his own information, prepare his own personal financial statement, complete the tax organizer form, and provide the material directly to Rodgers' office or provide it through DS.

The recipient of the information provided by DS was Alla Troitskaya of Rodgers' office.  Troitskaya, an IRS-certified Enrolled Agent, was the individual responsible for the initial input of the information into the Lacerte tax return preparation software.  During the initial inputting, if Troitskaya had questions or concerns regarding the information being provided by DS, Troitskaya would contact DS by telephone or email to resolve the issues.  This would in some instances result

in DS making revisions to the QuickBooks software and providing Troitskaya with revised financial statements.  Troitskaya did not operate or have access to the QuickBooks software files maintained by DS.  Troitskaya would then revise the inputs into Lacerte, and place the revised financial statements or other documents that DS provided into the client file.

As Troitskaya prepared the clients' tax returns, she had questions regarding the accounting or tax treatment of a particular item.  She brought her questions to Ramon Barbieri, CPA, of Rodgers' office.  Barbieri would also review the tax return for various issues to further ensure quality.  If Barbieri could not resolve the issue raised by Troitskaya, then either or both would bring the matter to Rodgers for resolution.  To the extent the issue raised a factual question, Rodgers reached out to JR or SK to obtain clarification.  If the issue was a legal one, Rodgers office undertook legal research.

After Troitskaya and Barbieri prepared and reviewed the clients' tax returns, they brought them to Rodgers for final review, and signed the relevant control sheets documenting the completion of their work.  At this point in the process, Rodgers held face-to-face meetings with JR and SK to discuss the five entity returns, as well as their individual returns.  Any questions or concerns that arose were resolved through these meetings, and may have included additional revisions to the draft tax returns.  Once Rodgers signed the control sheets indicating that the returns were in final form, they were sent to the clients for a final review, signature, and filing by

DS.

### F.  The 2009 & 2010 Tax Returns

Rodgers and his staff prepared the clients' 2009 and 2010 tax returns based on the information that they received from DS.  In particular, the amounts that appear on the final drafts of the tax returns match the final drafts of the financial statements that were provided by DS for the return preparation.  There are a limited number of differences; these are the result of communications between Rodgers' office and the clients, including DS, to obtain clarification or to correct mistakes made by DS.

There is no evidence that Rodgers or his staff either willfully attempted to understate the clients' tax returns, or that they recklessly or intentionally disregarded a rule or regulation.

## IV.   DEFENDANT'S AFFIRMATIVE DEFENSE - VARIANCE

Defendant has raised variance as an affirmative defense to Plaintiff's claims. This defense is designed to shield the United States from claims that are presented for the first time during litigation for the refund of amounts paid, i.e., such claims were not raised during the administrative refund claim process with the IRS.  The elements necessary to establish the variance defense are as follows:

        (1) Plaintiff filed an administrative claim;

        (2) The factual or legal bases for the claim differ from the claims pursued by Plaintiff in litigation;

        (3) The variance is substantial; and

(4) The variance is prejudicial to the government's defense.[45]

It is not clear to Plaintiff whether Defendant intends to pursue this affirmative defense.  Should Defendant decide to do so, the evidence suggests that the variance defense is inappropriate in this case.  Plaintiff fully and completely articulated his bases for relief in his administrative refund claim that he submitted to the IRS.  It is inconceivable that Defendant was unaware of the bases for Plaintiff's claims.

## V.   EVIDENTIARY ISSUES

There are two evidentiary issues that the parties have discussed.  Plaintiff anticipates that the parties may need to file motions in limine unless further discussions resolve the issues.  Such issues will affect the trial in terms of substance, length, and the presentation of evidence.

The first issue is Defendant's objection based on relevance to testimony from Plaintiff's expert witness, Karen Hawkins.  Defendant has informed Plaintiff that it plans to file a motion to exclude Ms. Hawkins testimony.  Plaintiff will of course oppose that motion, and seek to have Ms. Hawkins testify at trial.

The second issue is the manner in which Defendant may seek to establish understatements on the clients' tax returns at trial.  An understatement of tax is a

---

[45] 26 C.F.R. §301.6402-2(b)(1); *Boyd v. United States*, 762 F.2d 1369, 1371-72 (9th Cir. 1985); *North Carolina Citizens for Business & Indus. v. United States*, 18 Cl. Ct. 106, 117-18 (Ct. Cl. 1989); *Tucker v. Alexander*, 275 U.S. 228, 231 (1927) ("If the Commissioner is not deceived or misled by the failure to describe accurately the claim .. it may be more convenient for the government, and decidedly in the interest of an orderly administrative procedure, that the claim should be disposed of upon its merits.").

prerequisite to the imposition of the penalty against Plaintiff.[46]  Without an

understatement, Defendant is required to abate the penalty.[47]  The penalty statute

however requires that the "determination of whether or not there is an

understatement of liability *shall be made without* regard to any administrative or

judicial action involving the taxpayer [i.e., the client]."[48]  This prohibits the use of

certain IRS documents from and/or IRS testimony regarding the IRS examinations,

i.e., "administrative … action," of the clients to prove the existence of an

understatement in this action.

By statute, Defendant bears the burden of production with respect to all

penalties that the United States seeks to impose pursuant to any provision of the

IRC, including the instant penalties.[49]  This burden has been defined such that it

requires the United States to "come forward with sufficient evidence indicating that

it is appropriate to impose the penalty."[50]  It is doubtless that in satisfying this

obligation Defendant must demonstrate the existence of one or more

understatements of tax on the clients' tax returns.  Defendant, based on discussions

between counsel, does not dispute the existence of this obligation.

The upshot of this statutory construct is that Defendant must prove in this

---

[46] 26 U.S.C. §6694(b).
[47] 26 U.S.C. §6694(d).
[48] 26 U.S.C. §6694(e) (*emphasis added*).
[49] 26 U.S.C. §7491(c).
[50] *Higbee v. Commissioner*, 116 T.C. 438, 446-47 (June 6, 2001); *see El v. Commissioner*, 144 T.C. 9 (Mar. 12, 2015) (*citing Higbee*); *United States v. Vistoso Partners, LLC*, 109 A.F.T.R.2d (RIA) 344 *16 (D. Ariz. Jan. 3, 2012).

litigation and at trial that there were understatements of tax on the clients' tax returns.  Defendant is prohibited from relying on documents or testimony regarding the administrative action taken by the IRS with respect to the clients.  This includes analyses, conclusions and determinations of the IRS in asserting understatements of tax against the clients.  Thus, Defendant cannot establish the existence of an understatement by introducing into evidence administrative documents prepared by the IRS, such as records of assessment, Revenue Agent Reports, IRS Appeals Memoranda, notes, or any other documents that reflect administrative action involving the clients.  In addition, Defendant cannot introduce testimony from the IRS Revenue Agent or other IRS personnel that were involved in the matter to prove the existence of an understatement.

Plaintiff however is not suggesting that Defendant cannot use documents or testimony provided by the clients during their IRS examinations.  In fact, Defendant must prove the understatements using percipient witnesses, such as the clients themselves, and/or the source documents used to prepare the tax returns, such as financial statements, etc.

Further, this is a *de novo* proceeding, as Defendant is well aware.[51]  As

---

[51] *See R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) (In describing the *de novo* standard of review, the court stated, "[t]he court does not sit in judgment of the Commissioner; the court places itself in the shoes of the Commissioner."); United States of America's Supplemental Memorandum in Support of Its Motion for Protective Order, Docket Entry no. 28, pg. 2.

Defendant recently reminded this Court, "[a]s with the appeals officer, the revenue agent's subjective view of whether or not Rodgers is liable for the penalties is irrelevant."[52]  And the Court in its recent order on the parties' discovery dispute affirmed this point when it stated, "refund suits such as this are *de novo* proceedings in which district courts determine tax liability regardless of the IRS's determination or reasoning at the administrative level."[53]  Defendant correctly states in summarizing this Court's task that "Rodgers's liability under §6694 of the Internal Revenue Code (26 U.S.C.) will be determined by looking at the facts regarding his preparation of the tax returns on which the penalty was based and the provisions of the statute."[54]  Apart from being prohibited, evidence of IRS administrative analyses, conclusions and determinations are also irrelevant to the trial of this action.

## VI.   LEGAL ISSUES

Other than the issues described above, Plaintiff is aware of one other potential legal issue.  Defendant may seek to argue that the willfulness standard in IRC section 6694(b)(2)(A) includes recklessness.  It is Plaintiff's understanding that Defendant is in the process of further considering this issue.  Plaintiff disagrees that

---

[52] United States of America's Supplemental Memorandum in Support of Its Motion for Protective Order, Docket Entry no. 28, pg. 2.
[53] Minute Order, Magistrate Judge Sagar, Docket Entry no. 32, pg. 2 (*internal citations omitted*).
[54] United States of America's Supplemental Memorandum in Support of Its Motion for Protective Order, Docket Entry no. 28, pg. 5.

the willfulness standard includes recklessness in this context.  Should Defendant seek to improperly broaden the scope of willfulness, Plaintiff will respond in future briefing.

## VII.   ATTORNEY'S FEES

Plaintiff is seeking a judgment for reasonable litigation costs incurred in this court proceeding as permitted by IRC section 7430.  Such costs include court costs, expert witness expenses, and attorneys' fees.[55]  This claim is based on the assumption that Plaintiff is the prevailing party in this case as that term is defined in the IRC.[56]  Plaintiff's net worth did not exceed $2 million as of the filing of this action.[57]  Defendant will not be able to establish that its position is substantially justified.[58]

## VIII.  OTHER MATTERS IN L.R. 16

Local Rule 16 contains a few additional requirements with respect to a Memorandum of Contentions of Fact and Law.

Bifurcation of Issues (L.R. 16-4.3): Plaintiff does not request that the Court bifurcate any issues to be tried in this action.

Jury Trial (L.R. 16-4.5): The claims in this action are triable to a jury as a matter of right pursuant to 28 U.S.C. section 2402.  The parties however have

---

[55] 26 U.S.C. §7430(c)(1).
[56] 26 U.S.C. §7430(c)(4)(A).
[57] 26 U.S.C. §7430(c)(4)(A)(ii) and 28 U.S.C. §2412(d)(2)(B).
[58] 26 U.S.C. §7430(c)(4)(B).

decided to have the trial of this action be to the Court.

Abandonment of Issues (L.R. 16-4.6): Defendant has abandoned five of the original 14 penalties that it asserted.  Plaintiff is unaware of any other claims or affirmative defenses that have been abandoned.

DATED: 1/3/2017                              Respectfully submitted,


                                        By  s/ Chad D. Nardiello
                                        Chad D. Nardiello
                                        Attorney for Plaintiff

                                        Yosef Y. Manela
                                        Attorney for Plaintiff