1   NICOLA T. HANNA
    United States Attorney
2   THOMAS D. COKER
3   Assistant United States Attorney
    Chief, Tax Division
4   ANDREW T. PRIBE (CA SBN 254904)
5   Assistant United States Attorney
6         Federal Building, Suite 7211
          300 North Los Angeles Street
7         Los Angeles, California 90012
8         Telephone: (213) 894-6551
          Facsimile: (213) 894-0115
9         E-mail: andrew.t.pribe@usdoj.gov
10
11  *Attorneys for the United States of America*

12              UNITED STATES DISTRICT COURT
13              CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
14

15  JOHN Q. RODGERS,                    Case No.: 2:15-cv-9441 PA(ASx)

16         Plaintiff /                  United States of America's Opening
17         Counterdefendant             Brief on Remand From the Ninth
                                        Circuit.
18         v.
19  UNITED STATES OF AMERICA,           No hearing scheduled.
20
           Defendant /                  Judge Percy Anderson
21         Counterplaintiff
22
23
24
25
26
27
28

**<u>Table of Contents</u>**

I.    Statement of facts. ...................................................................................... 2

II.   Legal Standard. ........................................................................................... 12

III.  Applicable tax principles. ........................................................................ 13

IV.   Rodgers willfully understated the tax liability on the corporate

      returns for 2009 and 2010. ...................................................................... 14

V.    Conclusion. .................................................................................................. 21

## Table of Authorities

## Cases

*Charles Ilfeld Co. v. Hernandez,*
 282 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127 (1934) ................................. 14

*Dobbe v. Commissioner,*
 61 Fed. App'x 348 (9th Cir. 2003) ...................................................... 14

*Estate of Boyd v. Commissioner,*
 28 T.C. 564 (T.C. 1957) ...................................................................... 14

*Friend v. H.A. Friend & Co.,*
 416 F.2d 526 (9th Cir. 1969) .............................................................. 14

*Glendinning, McLeash & Co., v. Commissioner,*
 61 F.2d 950 (2d Cir. 1932) .................................................................. 14

*Herman & MacLean v. Huddleston,*
 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) .......................... 13

*Marwais v. Commissioner,*
 354 F.2d 997 (9th Cir. 1965) .............................................................. 14

*Pickering v. United States,*
 691 F.2d 853 (8th Cir. 1982) .............................................................. 12

*Ritchey v. United States Internal Revenue Service,*
 9 F.3d 1407 (9th Cir. 1993) .................................................................. 2

*United States v. Dykstra,*
 991 F.2d 450 (8th Cir. 1993) .............................................................. 13

*United States v. Guidry,*
 199 F.3d 1150 (10th Cir. 1999) .......................................................... 13

*United States v. Jewell,*
 532 F.2d 697 (9th Cir. 1976) .............................................................. 13

*United States v. Kapp,*

    564 F.3d 1103 (9th Cir. 2009) ................................................................. 13

*United States v. Klausner,*

    80 F.3d 55 (2d Cir. 1996) ....................................................................... 13

*United States v. Marabelles,*

    724 F.2d 1374 (9th Cir. 1984) ............................................................... 13

*United States v. Pomponio,*

    429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) ............................. 12

*United States v. Poole,*

    640 F.3d 1141 (4th Cir. 2011) ............................................................... 13

*United States v. Slutsky,*

    487 F.2d 832 (2d Cir. 1973) ................................................................. 13

**Statutes**

IRC § 273(a)(3) ............................................................................................ 14

IRC § 61(a) ................................................................................................... 13

IRC § 6694(b) ....................................................................................... 12, 13

IRC § 6694(b)(2)(A) .................................................................................... 2

IRC § 6694(b)(2)(B) .................................................................................... 2

IRC § 7701(a)(36) ................................................................................. 12, 14

**Regulations**

26 C.F.R. § 1.274-2(a)(iii) .......................................................................... 14

iii

This case has been remanded by the Ninth Circuit to consider whether the penalties predicated solely on § 6694(b)(2)(A) of the Internal Revenue Code (26 U.S.C.) (IRC) remain justified in light of the evidence adduced at trial.  The Ninth Circuit determined that the Court erroneously included the concept of recklessness within the definition of willfulness under that section.  The Ninth Circuit clarified that "willfulness under IRC § 6694(b)(2)(A) requires 'a conscious act or omission made in the knowledge that a duty is therefore not being met.'"[1]

The evidence adduced at trial establishes that John Rodgers willfully understated the tax due on the 2009 and 2010 tax returns for Rossmith Packaging, Inc. (Rossmith), the 2009 and 2010 tax returns for Ross Pac, Inc. (Ross Pac), and the 2010 tax return for Freshtech, Inc. (Freshtech).

The Ninth Circuit affirmed the Court's imposition of the IRC § 6694(b)(2)(B) penalties assessed for the Scott Keller and Joseph Ross tax returns for 2009 and 2010, so they are no longer at issue.

## I.    Statement of facts.

Rodgers is a licensed California attorney and has been so since 1985.[2] Rodgers is a certified public accountant and has been so since 1989.[3] Rodgers has been working as an accountant and a tax attorney in his own practice since 1987.[4]  Since 2010, Rodgers has conducted his tax-return-preparation practice through a corporation named John Q. Rodgers Law

---

[1]  Ninth Circuit memorandum opinion (dkt. 124, filed June 21, 2019) (*quoting Ritchey v. United States Internal Revenue Service,* 9 F.3d 1407, 1411 (9th Cir. 1993)).

[2]  Findings of facts and conclusions of law (dkt. 113, filed Nov. 8, 2017), ¶ 5.  If the Government is citing to the conclusions-of-law portion of the Court's findings, it will cite to "Conclusions of law."

[3]  *Id.,* ¶ 4.

[4]  *Id.,* ¶ 5

2

Corporation.[5]  Ramon Barbieri is a certified public accountant and has been so since 1988.[6]  In 2009 or 2010, Barbieri and Rodgers formed a partnership.[7] Barbieri's professional focus is financial accounting.[8]  Alla Troiskaya is a tax-return preparer employed by Rodgers since 2004.[9]

As a tax-return professional, Rodgers knows the following: (a) as taxable income increases, tax increases; (b) as deductions decrease, tax decreases; (c) expenses can be deducted only once; (d) to claim a deduction, an expense must actually be incurred; and (e) personal expenses are not deductible as business expenses.[10]  As a tax professional, Rodgers understands in the preparation of tax returns: (a) he has a duty not to ignore the implications of information furnished to him or actually known by him; and (b) he must make reasonable inquiries if the information as furnished appears to be incorrect or incomplete.[11]  Regarding the preparation of corporate tax returns, Rodgers understands that: (a) multiple corporations with common owners increases the complexity of the tax returns; and (b) the presence of cash flows between such companies requires the tax-return preparer to make sure that the cash flows are properly accounted for.[12]

---

[5]  *Id.,* ¶ 6.

[6]  *Id.,* ¶ 10.

[7]  *Id.,* ¶ 12.

[8]  *Id.,* ¶ 13.

[9]  *Id.,* ¶ 14.

[10]  *Id.,* ¶ 16.

[11]  *Id.,* ¶ 17.

[12]  *Id.,* ¶ 18.

Ross and Keller owned and operated Rossmith and Ross Pac in 2009 and 2010.[13]  Ross and Keller owned two-thirds of Freshtech and operated Freshtech in 2009 and 2010.[14]  Dana Styck is the bookkeeper/controller of Rossmith, Ross Pac, and Freshtech and has been so since July 2009.[15]  The bookkeeper/controller of Rossmith employed immediately before Styck was previously employed by Rodgers.[16]  Before 2009, Rodgers was Ross's personal accountant and tax-return preparer for many years and was Rossmith's outside accountant and tax-return preparer for many years.[17]  After Ross Pac and Freshtech were formed, Rodgers served as the outside accountant and tax-return preparer for those entities.[18]  Before 2009, Rodgers provided Ross with tax, accounting, and financial advice regarding Ross's businesses for many years.[19]  Until 2012, Rodgers had prepared Ross's individual and Rossmith's corporate tax returns since the 1980s.[20]

Since 2006, Rossmith, Ross Pac, and Freshtech have shared office space, office equipment, office supplies, and employees.[21]  In addition, Rossmith, Ross Pac, and Freshtech share the expenses associated with the shared office space, office equipment, office supplies, and employees.[22]  Rossmith, Ross Pac, and Freshtech each maintain a separate general ledger

---

[13]  *Id.,* ¶¶ 19, 20.

[14]  *Id.,* ¶ 21.

[15]  *Id.,* ¶ 22.

[16]  *Id.,* ¶ 23.

[17]  *Id.,* ¶¶ 24, 25.

[18]  *Id.,* ¶¶ 26, 27.

[19]  *Id.,* ¶ 29.

[20]  *Id.,* ¶ 30.

[21]  *Id.,* ¶ 43.

[22]  *Id.,* ¶ 44.

as part of its normal bookkeeping practices.[23]  A general ledger is a set of accounts providing a complete record of the financial transactions of a company.[24]  In the general ledger, the expenditures of the company are categorized into different categories, such as insurance, postage, telephone, and other designated categories.[25]  From the general ledgers, the total amount paid by Rossmith for different types of expenses may be determined.[26]  In addition, the amount of contribution to that expense from Ross Pac and Freshtech and the net amount paid by Rossmith for the expense categories may be determined from the general ledgers.[27]

Rodgers and Barbieri were familiar with and understood the procedures and financial records being used by Rossmith, Ross Pac, and Freshtech.[28]  In 2007, Rodgers suggested that Rossmith, Ross Pac, and Freshtech enter into an agreement memorializing their cost-sharing arrangement.[29]  Rodgers knew of the cost-sharing arrangement between Rossmith, Ross Pac, and Freshtech in 2007.[30]

Generally speaking, the expenses of Rossmith Packaging, Ross Pac, and Freshtech are paid by Rossmith Packaging, although occasionally, Ross Pac and Freshtech paid their own expenses directly to vendors.[31]  Ross Pac and Freshtech occasionally paid to Rossmith lump-sum payments.[32]  From

---

[23]  *Id.,* ¶ 45.
[24]  *Id.,* ¶ 46.
[25]  *Id.,* ¶ 47.
[26]  *Id.,* ¶ 48.
[27]  *Id.,* ¶ 49.
[28]  *Id.,* ¶ 50.
[29]  *Id.,* ¶ 51.
[30]  *Id.,* ¶ 52.
[31]  *Id.,* ¶ 53.
[32]  *Id.,* ¶ 54.

the lump-sum payments from Ross Pac and Freshtech, Rossmith would allocate portions of the payment to various expenses.[33]  Typically, an accounting category designated as "suspense" is a temporary holding account for transactions that the bookkeeper needs further guidance from an accountant to categorize properly.[34]  Clients would frequently contact Rodgers's office, and sometimes Rodgers himself for direction as to how to treat items placed in suspense accounts.[35]  Rossmith, Ross Pac, and Freshtech each had a suspense account.[36]  Barbieri directed Styck to rename the "suspense account" in the general ledgers as "corporate-operating expenses."[37]  The suspense account and the corporate-operating-expense account are the same thing.[38]  Funds from Ross Pac and Freshtech that Rossmith did not allocate to a specific shared expense were allocated to an account designated the "suspense account."[39]  Any amount remaining in Rossmith's suspense account was income to Rossmith.[40]  Barbieri understood that simply transferring money from one company to another does not make the transfer a deductible expense.[41]

Rodgers's general tax-preparation procedure was to have an individual other than Mr. Rodgers or the initial tax-return preparer review the tax return and raise any factual or legal questions.[42]  For the 2009 and 2010 tax

---

[33]  *Id.,* ¶ 55.

[34]  *Id.,* ¶ 56.

[35]  *Id.,* ¶ 58.

[36]  *Id.,* ¶ 59.

[37]  *Id.,* ¶ 60.

[38]  *Id.,* ¶ 61.

[39]  *Id.,* ¶ 62.

[40]  *Id.,* ¶ 63.

[41]  *Id.,* ¶ 64.

[42]  *Id.,* ¶ 65.

returns for Ross, Keller, Rossmith, Ross Pac, and Freshtech, Troitskaya was the initial preparer. After Troitskaya completed her tasks regarding the 2009 and 2010 tax returns for Ross, Keller, Rossmith, Ross Pac, and Freshtech, the returns were given directly to Rodgers for tax review and Barbieri reviewed the accounting for the corporate returns.[43] Troitskaya viewed the preparation of the tax returns for Rossmith, Ross Pac, and Freshtech as very complex and agreed that she had never before seen returns like the returns for Ross, Keller, Rossmith, Ross Pac, and Freshtech.[44]

In the preparation of the corporate tax returns, neither Rodgers nor Troitskaya reviewed the general ledgers of the companies.[45] There was no impediment to Rodgers requesting the general ledgers of the companies had he chosen to do so.[46] But Rodgers did not, and would not request the general ledgers "unless there's a reason," because it is not cost effective.[47]

Rodgers and his staff would suggest modification for Styck to make to the profit-and-loss statements.[48] Styck also make changes to the general ledger at the direction of Rodgers and his staff.[49] The 2009 and 2010 profit-and-loss statement for Rossmith had not fewer than four iterations.[50] The iterations were necessary because the initial profit-and-loss statements had negative balances indicating that income and expenses were not adequately

---

[43] *Id.,* ¶ 66.

[44] *Id.,* ¶ 67.

[45] *Id.,* ¶ 68.

[46] *Id.,* ¶ 69.

[47] *Id.*

[48] *Id.,* ¶ 70.

[49] *Id.*

[50] *Id.,* ¶ 71.

characterized.[51]  Despite the apparent difficulties Rossmith and Ross Pac experieicned in attempting to characterize income and expense items, Rodgers did not ask for supporting documentation.[52]

On January 30, 2009, Ross Pac wrote a $212,000 check to Rossmith.[53] In its general ledger, Ross Pac entered this check in the account category designated as "suspense" while Rossmith entered this check in its general ledger in an account category designated as "corporate operating expense."[54] Styck recharacterized the $212,000 entry in the Ross Pac general ledger from the suspense account to the costs-of-goods sold account category at the direct of John Q. Rodgers Law Corporation.[55]  There is no evidence that Ross Pac purchased $212,000 of goods from Rossmith.[56]  The costs-of-goods-sold category is for direct expenses of the corporation in the production of goods, such as direct material costs, direct labor costs, and the purchase of assembled materials.[57]  Expenses that are not directly related to the costs of goods sold are not supposed to be included in the costs-of-goods-sold category.[58]  Administrative, office, and sales expenses are supposed to be recorded in categories other than the costs-of-goods-sold category.[59]  The $212,000 entry in the Rossmith general ledger in the corporate-operating expense account category was included in the total amount of negative

[51]  *Id.,* ¶ 72.

[52]  *Id.,* ¶ 73.

[53]  *Id.,* ¶ 74.

[54]  *Id.*

[55]  *Id.,* ¶ 75.

[56]  *Id.*

[57]  *Id.,* ¶ 76.

[58]  *Id.,* ¶ 77.

[59]  *Id.*

1   $422,959.27 in that category.[60]  To a trained tax preparer such as Rodgers, a

2   negative balance on a profit-and-loss statement signifies something amiss

3   necessitating further inquiry by the preparer.[61]

4        Keller hired Rodgers to prepare his 2009 and 2010 tax return.[62]

5   During 2009 and 2010, Keller owned a condominium in West Hollywood,

6   California, referred to as the Kings Road Condo.[63]  Keller planned to use the

7   Kings Road Condo for his business travel to the west coast.[64]  Keller told

8   Rodgers of his plan for the Kings Road Condo in 2008 and provided to Rodger

9   a lease agreement date March 2008 between himself and Rossmith regarding

10  the Kings Road Condo.[65]  Keller changed his mind, however, and rented out

11  the Kings Road Condo to an unrelated person and never used the Kings

12  Road Condo for business purposes.[66]  Although Keller never used the Kings

13  Road Condo for business, Rossmith paid $50,565.98 for various expenses

14  associated with the Kings Road Condo in 2009, for which it was reimbursed

15  $1,831.35 by Freshtech and $19,582.97 by Ross Pac.[67]  In 2010, Rossmith

16  paid $55,013.08 for various expenses related to the Kings Road Condo, for

17  which it was reimbursed $28,656.41 by Freshtech and $26,040.04 By Ross

18  Pac.[68]  In addition to these expenses, Rossmith paid to Keller or on behalf of

19  Keller, property taxes associated with the Kings Road Condo of $7,942.52 in

20

21  [60]  *Id.,* ¶ 78.

22  [61]  *Id.,* ¶ 57.

23  [62]  *Id.,* ¶ 88.

24  [63]  *Id.,* ¶ 31.

25  [64]  *Id.,* ¶ 32.

26  [65]  *Id.,* ¶ 33.

27  [66]  *Id.,* ¶ 34.

28  [67]  *Id.,* ¶ 35.

    [68]  *Id.,* ¶ 36.

2009 and at least $3,508.40 in 2010.[69]  For purposes of preparation of his 2009 and 2010 personal tax returns, Keller provided to Rodgers's office a summary of his expenses for the Kings Road Condo.[70]  The 2009 profit-and-loss statement for Rossmith included an expense item fo $29,161.57 for the Kings Road Condo.[71]  Keller's W-2 for 2009 and 2010 from Rossmith did not include the expenses or taxes paid by Rossmith, Ross Pac, and Freshtech.[72]

Rossmith and Ross Pac hired and paid Rodgers to prepare their 2009 and 2010 federal tax returns.[73]  Freshtech hired and paid Rodgers to prepare its 2010 federal income-tax returns.[74]  Rodgers signed the Rossmith 2009 and 2010 tax returns, the Ross Pac 2009 and 2010 tax returns, and the 2010 Freshtech tax return as the return preparer.[75]

Rossmith's 2009 tax return understated total income by not including $422,969.27 it received from Ross Pac and Freshtech that was not allocated as reimbursement by Rossmith to a shared expense.[76]  This understatement of income included the $212,000 that was received from Ross Pac and improperly designated as costs of goods on Ross Pac's general ledger at the direction of Rodgers's firm.[77]  On the 2009 Rossmith return, Rodgers also overstated deductions by including amounts which were received as reimbursement and included non-deductible country-club dues in the

---

[69]  *Id.,* ¶¶ 37, 38.

[70]  *Id.,* ¶ 39.

[71]  *Id.,* ¶ 40.

[72]  *Id.,* ¶ 41, 42.

[73]  *Id.,* ¶¶ 95, 113.

[74]  *Id.,* ¶ 113.

[75]  *Id.,* ¶¶ 95, 113.

[76]  *Id.,* ¶¶ 96–99.

[77]  *Id.,* ¶¶ 74–78.

advertising deduction.[78]  He claimed deductions related to Keller's King's Road Condo rental property that were also claimed by Keller on his personal returns and that, in any event, were not business-related expenses.[79] Similarly, as to Rossmith's 2010 tax return, Rodgers understated total income by not including $498,641.85 it received from Ross Pac and Freshtech that was not allocated as reimbursement by Rossmith to a shared expense; overstated the deduction for dues and subscriptions  by including non-deductible country-club dues; and claimed deductions related to Keller's King's Road Condo rental property that were also claimed by Keller on his personal returns and that, in any event, were not business-related expenses.[80]

Ross Pac's 2009 tax return included claimed expenses for officers of $86,841.52 that were not incurred by Ross Pac; $29,915.66 for "salaries–other" that were not incurred by Ross Pac; and $2,712.71 for claimed payroll taxes that were not incurred by Ross Pac.[81]  These claimed—but not actually incurred—expenses, along with the $212,000 transfer to Rossmith, were hidden in the costs-of-goods sold expenses on the tax return.[82]

Ross Pac's and Freshtech's 2010 tax return overstated their rent deduction by $63,432.76 and $48,091.88, respectively.[83]  Included in the overstatement of the rent deduction for both Ross Pac and Freshtech were expenses related to Keller's Kings Road Condo.[84]  They also overstated their

---

[78]  *Id.,* ¶¶ 96, 100–105.

[79]  *Id.,* ¶¶ 91–96, 106.

[80]  *Id.,* ¶¶ 107–112.

[81]  *Id.,* ¶¶ 114–116, 118.

[82]  *Id.,* ¶¶ 115–118.

[83]  *Id.,* ¶¶ 120.

[84]  *Id.,* ¶ 121.

1   deductions for dues and subscriptions, and supplies, repairs, and

2   maintenance.[85]  The deductions for dues and subscriptions included non-

3   deductible country-club dues.[86]

4

5   **II.     Legal Standard.**

6          For Rodgers to be liable for the penalty under IRC § 6694(b), the

7   Government must establish that:

8          a.     Rodgers is a tax-return preparer as defined in IRC § 7701(a)(36);

9          b.     The tax returns prepared by Rodgers contained an

10  understatement of tax; and

11         c.     Either:

12                i.      Rodgers's conduct in the preparation of the tax return was a

13                        willful attempt in any manner to understate the liability for

14                        tax on the return; or

15                ii.     Rodgers recklessly or intentionally disregarded the

16                        applicable rules or regulations resulting in the

17                        understatement.

18         For purposes of IRC § 6694(b), the Ninth Circuit has held that

19  willfulness "requires a conscious act or omission made in the knowledge that

20  a duty therefore is not being met."[87]  Willfulness does not require fraudulent

21  intent or evil motive.[88]  Willfulness is rarely subject to direct proof and must

22

23

24  _____

25  [85]  *Id.,* ¶¶ 122–123.

    [86]  *Id.,* ¶ 122.

26  [87]  Ninth Circuit memorandum opinion (dkt. 124) at 2.

27  [88]  *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *Pickering v. United States,* 691 F.2d 853, 855 (8th Cir. 1982).

28                                          12

generally be inferred from the defendant's acts or conduct.[89]  Willfulness may be inferred from the making of false entries in books or records,[90] unorthodox accounting practices with deceptive results,[91] and patterns of understating or failing to report income.[92]  The person's background and experience can be considered when determining whether the individual acted willfully.[93]

Willfulness may be established if the evidence establishes that the preparer consciously avoided learning of the relevant facts.[94]  Thus, if the preparer knew of a high probability that a fact or circumstance existed and deliberately sought to avoid confirming that suspicion, then the preparer may be found willful.[95]

The preponderance-of-the-evidence standard applies to the penalty provisions of IRC § 6694(b).[96]

## III.  Applicable tax principles.

Under the Internal Revenue Code, "gross income means all income from whatever source derived" except as otherwise provided by the Code.[97]

---

[89]  *United States v. Bishop,* 264 F.3d 535, 550 (5th Cir. 2001); *United States v. Marabelles,* 724 F.2d 1374, 1379 (9th Cir. 1984).

[90]  *Bishop,* 264 F.3d at 550.

[91]  *See United States v. Slutsky,* 487 F.2d 832, 844 (2d Cir. 1973).

[92]  *United States v. Klausner,* 80 F.3d 55, 63 (2d Cir. 1996)

[93]  *See United States v. Guidry,* 199 F.3d 1150, 1157–58 (10th Cir. 1999) (willfulness inferred from defendant's expertise in accounting via her business degree and work experience); *Klausner,* 80 F.3d at 63 (defendant's background as CPA and extensive business experience including that as a professional tax preparer).

[94]  *See United States v. Dykstra,* 991 F.2d 450, 452 (8th Cir. 1993); *United States v. Jewell,* 532 F.2d 697, 699–704 (9th Cir. 1976).

[95]  *See United States v. Poole,* 640 F.3d 114, 121 (4th Cir. 2011).

[96]  *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *United States v. Kapp,* 564 F.3d 1103, 1109 (9th Cir. 2009).

[97]  IRC § 61(a).

Double deductions are not allowed for the same economic loss.[98]  A taxpayer may not deduct expenses for which it has been reimbursed or for which it has a right to reimbursement.[99]  Absent a business purpose, the payment of personal expenses by a corporation on behalf of its shareholders is not deductible to the corporation and is a constructive dividend to the shareholder.[100]  Country-club dues are not deductible.[101]

Partners are agents of each other and one's knowledge is imputed to the other.[102]

## IV.   Rodgers willfully understated the tax liability on the corporate returns for 2009 and 2010.

After trial, the Court found that Rodgers was a tax-return preparer under IRC § 7701(a)(36) for the tax returns at issue and that the Rossmith 2009 and 2010 tax returns, the Ross Pac 2009 and 2010 tax returns, and the Freshtech 2010 tax return contained understatements of tax.[103]  These findings were not the subject of the appeal.  The only issue on remand is whether Rodgers acted willfully in understating the tax.

As set forth below, the evidence shows that Rodgers consciously understated tax on the corporate returns.

---

[98]   *Charles Ilfeld Co. v. Hernandez,* 282 U.S. 62, 68, 54 S.Ct. 596, 78 L.Ed. 1127 (1934) (absent clear Congressional intent, double deductions are not allowed); *Marwais v. Commissioner,* 354 F.2d 997, 998–999 (9th Cir. 1965).

[99]   *Glendinning, McLeash & Co., v. Commissioner,* 61 F.2d 950, 952 (2d Cir. 1932); *Estate of Boyd v. Commissioner,* 28 T.C. 564, 566 (T.C. 1957) ("It is well settled that expenses for which there exists a right of reimbursement are not ordinary and necessary business expenses[.]").

[100]   *Dobbe v. Commissioner,* 61 Fed. App'x 348, 349 (9th Cir. 2003).

[101]   IRC § 273(a)(3); 26 C.F.R. § 1.274-2(a)(iii).

[102]   *Friend v. H.A. Friend & Co.,* 416 F.2d 526, 533 (9th Cir. 1969) ("Well established concepts of partnership doctrine impute the knowledge and actions of one partner to all others.").

[103]   Conclusions of law, ¶¶ 18, 26–30.

14

The 2009 Rossmith tax return prepared by Rodgers contained an understatement of tax as reflected by the following:[104]

- The tax return did not report as income $422,969.27 Rossmith received from Ross Pac and Freshtech that was not allocated as reimbursement by Rossmith to a shared expense.
- There is no evidence in the record that this money was reimbursement for allocable expenses of Ross Pac and Freshtech.
- Rather, the record reflects that it was a transfer in excess of Ross Pac's and Freshtech's allocable expenses and, therefore, constituted income to Rossmith.
- The corollary of Barbieri's testimony that simple transfers of money between corporations are not deductible is that the recipient receives income.
- The tax return overstated its deduction for salaries and "services / consulting / 1099s" by $152,112.92.
- The tax return overstated its deduction for taxes and licenses by $88,694.49.
- The tax return overstated its deduction for advertising expenses by including $3,201.62 for membership dues at the Manhattan Beach Country Club.
- The tax return overstated its rental deduction by including $29,161.67 it paid in expenses for Keller's rental property, which had no relationship to Rossmith's business.

The 2009 Ross Pac tax return prepared by Rodgers contained an understatement of tax as reflected by the following:[105]

---

[104]    Conclusions of law (dkt. 113), ¶ 26.

[105]    Conclusions of law, ¶ 27.

15

- The tax return included claimed expenses for officers—placed in the costs-of-goods-sold expenses—of $86,841.52 that were not, in fact, incurred by Ross Pac.
- The tax return included claimed expenses for "salaries – other"— which were placed in the costs-of-goods-sold expenses—of $29,915.66 that were not, in fact, incurred by Ross Pac.
- The tax return included a $212,000 transfer of funds from Ross Pac to Rossmith in the costs-of-goods-sold expenses when Ross Pac did not in fact purchase goods from Rossmith.  Thus, although the money was transferred, Ross Pac claimed a cost-of-goods-sold expense for what was simply a transfer of money among companies with common ownership.
- The tax return, in its costs-of-goods-sold section, included claimed expenses for payroll taxes, which were $2,712.71 in excess of what Ross Pac actually contributed to payroll taxes.

The 2010 Rossmith tax return prepared by Rodgers contained an understatement of tax as reflected by the following:[106]

- The tax return did not report as income $498,641.85 Rossmith received from Ross Pac and Freshtech that was not allocated as reimbursement by Rossmith to a shared expense.
- There is no evidence in the record that this money was reimbursement for allocable expenses of Ross Pac and Freshtech.
- Rather, the record reflects that it was a transfer in excess of Ross Pac's and Freshtech's allocable expenses and, therefore, constituted income to Rossmith.

---

[106]  *Id.*, ¶ 28.

- The corollary of Barbieri's testimony that simple transfers of money between corporations are not deductible is that the recipient receives income.
- The tax return overstated its deduction for dues-and-subscriptions expenses by including $445.38 for membership dues at the Manhattan Beach Country Club.
- The tax return overstated its rental deduction by including $326.64 it paid in expenses for Keller's rental property, which had no relationship to Rossmith's business.

The 2010 Ross Pac tax return prepared by Rodgers contained an understatement of tax as reflected by the following:[107]

- The tax return overstated its rent deduction by $63,432.76.
- The tax return overstated its deduction for dues and subscriptions by at least $2,275.75.
- The tax return overstated its deductions for supplies, repairs, and maintenance by $9,971.24.

The 2010 Freshtech tax return prepared by Rodgers contained an understatement of tax as reflected by the following:[108]

- The tax return overstated its rent deduction by $48,091.88.
- The tax return overstated its deduction for dues and subscriptions by at least $823.42.
- The tax return overstated its deductions for supplies, repairs, and maintenance by $7,624.02.

Rodgers consciously made each of these understatements with the knowledge that he was not fulfilling his duties to truthfully and accurately

---

[107]   *Id.,* ¶ 29.

[108]   *Id.,* ¶ 30.

17

prepare the returns.  Rodgers did not follow his standard operating procedure with the Rossmith, Ross Pac, and Freshtech returns.  Although it was Rodgers's standard practice to have a second person other than himself review the tax returns after the initial preparation of tax returns, he did not require that in the case of the tax returns for Ross, Keller, Rossmith, Ross Pac, and Freshtech. [109]  Instead, this standard operating procedure was skipped in the case of these returns and the returns came straight to Rodgers for review after their initial preparation.[110]

Rodgers knew of the operations and cost-sharing arrangement of Rossmith, Ross Pac, and Freshtech.[111]  Rodgers provided advice to and direction about the cost-sharing arrangement to Ross, Keller, and Styck. Rodgers and his associates directed Styck as to the treatment of specific transactions in the books and records of Rossmith, Ross Pac, and Freshtech.[112]

Rodgers and Barbieri knew that money transferred in excess of reimbursement from Ross Pac and Freshtech was income to Rossmith.[113] Rodgers knew that deductions for the same expense could not be taken twice.[114]  Rodgers knew that he had a duty not to ignore the implications of information furnished to him or actually known by him and he knew that he had the duty to make reasonable inquiries if the information as furnished appears to be incorrect or incomplete.[115]

---

[109]  Findings of fact, ¶¶ 65–66.

[110]  *Id.*

[111]  *Id.,* ¶¶ 25–28, 50.

[112]  *Id.,* ¶¶ 50–52, 58–60.

[113]  *Id.,* ¶¶ 63, 64.  *See also id.,* ¶¶ 6–7, 16.

[114]  *Id.,* ¶ 16.

[115]  *Id.,* ¶ 17.

Regarding Rossmith's 2009 return, Rossmith's profit-and-loss statements had no fewer than four iterations.[116]  These iterations were necessary because the initial profit-and-loss statements had negative balances indicating that income and expense items were not adequately characterized.[117]  Although to a trained tax preparer such as Rodgers, a negative balance on a profit-and-loss statement signifies something amiss necessitating further inquiry by the preparer, Rodgers did not ask for any supporting documentation.[118]  As a result, the Rossmith 2009 return did not report as income $422,969.27 received from Ross Pac and Freshtech that was not allocated as reimbursement by Rossmith to a shared expense.[119]

Ross Pac's 2009 return included a $212,000 transfer of funds from Ross Pac to Rossmith in the cost-of-goods-sold expenses when Ross Pac did not purchase goods from Rossmith.[120]  This $212,000 transfer was initially entered in Ross Pac's general ledger in the "suspense" account category, but was later transferred to the costs-of-good-sold category at the direction of John Q. Rodgers Law Corporation.[121]  There is no evidence that Ross Pac purchased $212,000 in good from Rossmith in 2009.[122]  Rossmith did not allocate this $212,000 to any expense and it was included in the $422,959.27 that should have been included in Rossmith's income.[123]

---

[116]  *Id.,* ¶ 71.

[117]  *Id.,* ¶ 72.

[118]  *Id.,* ¶¶ 57, 73.

[119]  *Id.,* ¶ 99.

[120]  *Id.,* ¶ 75.

[121]  *Id.,* ¶¶ 75, 117.

[122]  *Id.,* ¶ 117.

[123]  *Id.,* ¶¶ 78, 96–99.

Essentially, in 2009, Ross Pac transferred $212,000 to Rossmith, which was not allocated to any expense.  Because it was not reimbursement, it was taxable income to Rossmith.[124]  But Rodgers did not include it in Rossmith's taxable income.  And because it was not allocated to a shared expense, it was not deductible to Ross Pac.[125]  Despite this, at the direction of Rodgers's firm, if not Rodgers himself,[126] Ross Pac designated it as costs-of-goods sold, which reduced Ross Pac's taxable income by that amount.[127]

Rossmith's 2009 and 2010 returns, Ross Pac's 2010 return, and Freshtech's 2010 return include double deductions regarding Keller's Kings Road Condo.[128]  That is, Rodgers claimed that both Keller as well as the business entities were entitled to claim deductions for the same expenses. Rodgers knew of the Kings Road Condo, received a summary of information from Keller that reflected his expenses for the condo, and received a profit-and-loss statement for Rossmith that included an expense item of $29,161.57 specifically referencing the Kings Road Condo.[129]  Keller's W-2's for 2009 and 2010 did not include monies paid by Rossmith, Ross Pac, and Freshtech for expenses relating to the Kings Road Condo.[130]  Despite the conflicting information on Keller's personal-expense statement and Rossmith's profit-and-loss statement regarding the Kings Road Condo, Rodgers claimed

---

[124]  *Id.,* ¶ 98.

[125]  *Id.,* ¶ 16(d).

[126]  *Id.,* ¶ 117 ("This account category [costs of goods sold] includes a line entry that states: "Per JR move from suspense monies Suspense $212,000.")

[127]  *Id.,* ¶ 117.

[128]  *Id.,* ¶¶ 31–40, 91–94, 96, 106–107, 112, 119–121.

[129]  *Id.,* ¶ 40.

[130]  *Id.,* ¶¶ 41–42.

20

duplicative deductions on the Keller and Rossmith, Ross Pac, and Freshtech returns.

Through his acts and omissions, Rodgers consciously understated the tax on the corporate returns.  Rodgers, directly or through his partner or agents, directed Styck to place the $212,000 payment from Ross Pac to Rossmith in the costs-of-goods-sold category, thereby reducing the tax owed by Rossmith.  Further, Rodgers improperly claimed deductions that were not in fact incurred and hid these in the costs-of-goods-sold expenses.[131]  Such false entries support the conclusion that Rodgers consciously understated the taxes of these corporate entities.  Indeed, Rodgers is very experienced, having worked as an accountant and a tax attorney in his own practice since 1986.[132]  The sophistication involved in attempting to hide these false expenses in the costs-of-goods-sold category supports a finding of willfulness.  Moreover, Rodgers had the information available to him regarding the Kings Road Condo.  Despite having the information showing that Keller was claiming personal deductions for the Kings Road Condo while Rossmith was paying expenses related to the condo, Rodgers still claimed deductions on Keller's individual returns and the corporate returns for those same expenses.

## V.    Conclusion.

Rodgers willfully understated the tax liability of the tax returns at issue.  The Government need not prove fraudulent intent or evil motive.  All the Government needs to show is that Rodgers acted consciously in the

---

[131]   *Id.,* ¶¶ 114–18.

[132]   *Id.,* ¶ 7.

knowledge that a duty was not being met.  Here, the evidence shows that standard is met.

Dated: November 4, 2019

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

**/s/ Andrew T. Pribe**
ANDREW T. PRIBE
Assistant United States Attorney

22